### THE WINIFRED.

(District Court, S. D. New York. June 25, 1900.)

SALVAGE—AMOUNT OF AWARD—TOWAGE SERVICES.

The W., a steamer carrying freight between New York and New Orleans (her value being $150,000, her freight $10,000, and her cargo of the value of $550,000), became wholly disabled in a hurricane on the high seas. The V., a steamer valued at $250,000, carrying passengers and mails from New York to Havana, sighted the W., and, in answer to her signals of distress, came to her assistance, and, by request of her master, towed her safely to the port of Nassau, 250 miles, the trip requiring about three days. A boat of the V. made three trips to the W., at some peril, to carry hawsers, two of which parted. No other vessel was at hand, and, although the W. was in the track of steamers when picked up, she was drifting out of it. Held, that the V. was entitled to a salvage award of $23,000, in addition to her expenses, to be apportioned pro rata between the W., her freight and cargo, and to be distributed, $3,500 to the officers and crew of the V.,—an extra allowance being made to the seamen who manned the boat,—and the remainder to the owners.[1]

In Admiralty. Suit to recover for salvage services.

Cowen, Wing, Putnam & Burlingham, for libelants.
Convers & Kirlin, for the Winifred.
Maxwell Evarts and R. D. Benedict, for the cargo.

[1] Amount of salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

BROWN, District Judge. This libel was filed to recover salvage compensation for services performed by the libelants' steamer Vigilancia, in towing the steamship Winifred and her cargo from a point on the high seas, between Jupiter and the Bahamas, in latitude 29° 8′ N., and longitude 78° 7′ W., about 250 miles to the port of Nassau, New Providence, on the 15th, 16th and 17th of August, 1899. The Winifred had become disabled and unmanageable in a hurricane of extreme violence with an occasional velocity from 120 to 140 miles per hour, which struck her on August 12th and continued through the 13th and 14th, but moderated during the night of the 14th and the morning of the 15th. The hurricane was the most violent which had been known to the master during his long experience.

The log of the ship from hour to hour during the 13th and 14th, mentions in detail the heavy seas shipped, the destruction of the steam steering gear, the smashing of skylights, the flooding of the saloon, carrying away of the smokestack, carrying away and destruction of all the small boats save one, smashing of ventilators and steam pipe and fouling of the pumps with coal so that they could not be made to work. At 2 p. m. on the 15th, the entry states that it was "unanimously agreed that the ship was beyond control"; and during that day it is stated that "all hands were bailing water out from the engine room and stoke hole. Water not decreasing"; and that all the sail was gone except the fore staysail.

In the afternoon of the 15th the officers of the Vigilancia, bound on one of her regular trips with the mails from New York to Havana, noticing the Winifred's signals of distress, bore down towards her, and after an interchange of signals, in which the master of the Winifred signaled that he could not abandon his ship, that he was out of provisions, and that he had no small boat fit to send out to the Vigilancia, the latter agreed to take the Winifred in tow and sent through a heavy sea a small boat of her own to the Winifred to take a line for the towing cable, which was made fast. After a short period the cable parted, and the Vigilancia lay by until the next morning, when a cable was again adjusted and the towing resumed; but the hawser during the forenoon again parted, after which a new steel hawser of the Vigilancia's was made use of, and with this the vessel was towed safely to Nassau, arriving there between 8 and 9 p. m. of the 17th. On leaving, the Vigilancia received from the master of the Winifred a certificate that the latter steamer when taken in tow "was in a disabled condition and totally unmanageable."

The Vigilancia was a steamer 321 feet long by 45 feet beam, of about 4,000 gross tons, and valued at about $250,000. She carried the mails, and on this trip had 64 passengers. The Winifred was somewhat smaller, in the employ of the Southern Pacific Company, carrying cargo from New York to New Orleans without passengers. Her agreed value on the trial, less cost of repairs, was $150,000, her freight, $10,032, and her cargo about $550,000. At the time the Winifred was taken in tow she was in the ordinary track of steamers from New York to West Indian ports. During the night of the 15th, however, she drifted about 50 miles to the eastward, and if not taken in tow by the Vigilancia, she would naturally have been soon out

of the ordinary line of traffic. No other steamer at the time was in her vicinity. She was in every way, however, a staunch steamer, and though much water reached the engine room and the lower hold, I think this came in principally from the deck and from the smashing of her upper works, and not from any serious leaks in the hull.

The chief engineer considered that the loss of the smokestack might be temporarily supplied by certain devices which he had heard of, but which he had never executed, by means of which the vessel might have reached port in favorable weather in 10 or 12 days. So much damage, however, had been done to the ship, that her need of salvage aid was extreme; and this can in no wise be disparaged by the subsequent opinion of her officers looking backward as to what they might possibly have done. The Alaska, 23 Fed. 608; The T. F. Oakes (D. C.) 87 Fed. 232. I must treat the case as one in which the need of salvage service was urgent, the values at risk on the part of the Winifred large, and the Vigilancia called upon to render assistance under circumstances which, owing to her own delay already suffered from the hurricane, and the necessity of an expeditious delivery of the mails, made the service desired by the Winifred an unwelcome one, but nevertheless a service which, from the situation of the Winifred, it was impossible to refuse. The passage in the small boat to the Winifred in a rough sea was accompanied by some danger. This passage was made three times, owing to the breaking of the hawsers. After the steel hawser was properly attached, the towage was performed at moderate speed and without extraordinary incidents in such a service. The injuries to the Vigilancia's hawsers, the loss of coal, the additional material and expenses, as testified to, amount in all to about $1,500.

Without dwelling further upon the particular circumstances of this towage service, which has no precise parallel reported, and having considered attentively all the points urged by counsel, I think a reasonable salvage award to the Vigilancia will be $23,000, together with her expenses of $1,500 above stated, with costs of the suit, including the expense of taking testimony at New Orleans and Baltimore; and that these amounts should be apportioned pro rata upon the ship, freight and cargo, according to their values as above stated. Of this amount, $3,500 should be awarded to the officers and crew, and the residue to the owners of the Vigilancia. Of the $3,500, $500 should be awarded to the master of the Vigilancia and $400 to the chief engineer in full of their claims; $50 to the second officer who was in charge of the small boat upon her several trips to the Winifred, and $100 to the other seamen who manned the small boat, as an extra award for their special service. The residue of the above sum of $3,500 should be divided pro rata according to their wages among all the officers and crew of the Vigilancia, except the master and chief engineer. Decreed accordingly.